```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

                                              05 Cr. 1285-01(RWS)
        - against -
                                              SENTENCING OPINION
SUZULA ROSE BIDON,

                        Defendant.

------------------------------------------X
```

Sweet, D.J.,

On May 4, 2006, defendant Suzula Rose Bidon ("Bidon") pled guilty to one count of conspiring in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). For the reasons set forth below, Bidon will be sentenced to a term of imprisonment of 48 months, to be followed by a five-year term of supervised release. Bidon will also be required to pay a mandatory special assessment of $100.

**Prior Proceedings**

Bidon was arrested on October 7, 2005. An indictment was filed in the Southern District of New York on December 6, 2005, charging that from about June 2005 to about September 8, 2005, Bidon and others conspired in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute fifty grams and

more of methamphetamine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). On May 4, 2006, Bidon appeared before the Honorable Kevin Fox of this district and pled guilty to the charged criminal conduct in accordance with a plea agreement entered into with the Government. Bidon's guilty plea was accepted by this Court on June 29, 2006, and she is scheduled to be sentenced on October 24, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B) to afford adequate deterrence to criminal conduct;

 (C) to protect the public from further crimes of the defendant; and

       (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for --

       (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5)    any pertinent policy statement ... [issued by the Sentencing Commission];

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

### The Defendant

Suzula Rose Bidon was born on October 15, 1975, in Spooner, Wisconsin. Bidon was raised in a very rural area of northwestern Wisconsin until her family relocated to St. Paul, Minnesota. Shortly thereafter, her father, an alcoholic, passed away in 1991 following a heart attack. Bidon maintains a fairly close relationship with her mother, who remarried in 2000 and

3

continues to reside in Minnesota.  Bidon has never been married and does not have any children.

By all accounts, Bidon is a woman of great potential, intellect, and talent.  Bidon graduated from high school in June 1993 and was ranked ninth in her graduating class.  Her teachers reported that Bidon was an exceptional student, and Bidon was engaged in several extra-curricular activities during high school. Bidon went on to receive her B.A. in theater from Barnard College in New York City in 1999.

At the same time, Bidon is extremely troubled and seemingly incapable of taking control of her life or advantage of the opportunities afforded to her.  It was upon moving to New York to attend college in 1993 that Bidon developed a heroin problem, using the drug on a daily basis.  When her problem was discovered by her mother in 1995, she left New York and returned to Minnesota where she reportedly attended an in-patient treatment program and then resided for several months in a halfway house.  After resuming her heroin use while residing in California, Bidon eventually sought treatment again and began taking methadone.  Bidon reports having last used heroin in 1995-1996.

Bidon's problems with crystal methamphetamine did not develop until several years later, in approximately 2002, after she had returned to New York and completed her studies at Barnard.

4

Within the last year, Bidon has twice attended in-patient treatment programs in Minnesota in an attempt to overcome her problem with the drug. Last month, she was prematurely discharged from one of these in-patient treatment programs after testing positive for drug use.

In addition to heroin and crystal methamphetamine, Bidon has reported using Ecstacy, ketamine, and alcohol during different periods of her life, as well as experimenting with cocaine and hallucinogens.

To her credit, Bidon has made repeated, voluntary attempts to overcome her drug problems. In addition to attending several in-patient drug treatment programs, Bidon has also attended Narcotics Anonymous meetings in Minnesota. Her lack of success in combating her addictions may, unfortunately, be linked to the mental health challenges she has experienced for most of her life. Bidon herself believes that her drug use is a form of self medication.

Bidon reports first being brought for mental health treatment at the age of about twelve. Just prior to graduation from high school, in May 1993, she was hospitalized for several days. Medical records from her general practitioner show Bidon's continued treatment for depression and anxiety, for which she has been prescribed medication since she was a teenager. Bidon also

continues to be under the care of a mental health professional, who she visits with twice a week.

Despite these challenges, Bidon reports maintaining fairly consistent employment since 1995. According to Bidon, she is currently employed as a regional promotions representative for a record company. Prior to starting work for the record company in 2003, Bidon reports being employed by various employers in a number of different positions, including customer service representative, cashier, waitress, bartender, and bar manager.

**The Offense Conduct**

The following description draws on the Presentence Investigation Report prepared by the Probation Office of the United State District Court for the Southern District of New York, prepared on August 30, 2006, and revised on September 18, 2006. The specific facts of the underlying conduct are adopted as set forth in that report.

From about June 2005 through about September 8, 2005, Bidon's co-defendant ordered crystal methamphetamine on more than one occasion from Bidon. Bidon, who resided in Minnesota, mailed packages containing crystal methamphetamine to her co-defendant, who resided in New Jersey. Upon receipt of these packages, Bidon's co-defendant packaged and distributed the crystal methamphetamine

in the New York City area, including Manhattan. Bidon and her co-defendant are accountable for the distribution and possession with intent to distribute approximately 105 grams of methamphetamine.

## The Relevant Statutory Provisions

Pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846, the mandatory minimum term of imprisonment is ten years and the maximum term of imprisonment is a term of life. In addition, a term of at least five years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. The applicability of these statutory minimums may be limited, however, in certain cases where the criteria set out in 18 U.S.C. § 3553(f)(1)-(5) are met.

Bidon is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determina-

7

tion that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $4,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years, as determined by the Court.

**The Guidelines**

The March 27, 2006, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(a).

The Guideline for violations of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1. Based on the revised Presentence Investigation Report dated September 18, 2006, Bidon is responsible for conspiring to distribute and possess with the intent to distribute approximately 105 grams of methamphetamine (actual). As specified in the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(1), this amount of methamphetamine (actual) results in a base offense level of 32.

8

Based on her plea allocution, Bidon meets the conditions set forth in U.S.S.G. § 5C1.2(a)(1)-(5), including: (1) that the defendant have no more than one Criminal History point; (2) that the defendant not be a leader, organizer, manager or supervisor of others in the offense; (3) that the defendant not possess a firearm in connection with the offense; (4) that the offense not result in death or serious bodily injury to an individual; and (5) that, by the time of sentencing, the defendant truthfully has provided the Government all information and evidence the defendant has concerning the offense or offenses. Therefore, Bidon is eligible for a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(7).

Based on her plea allocution, Bidon has also shown recognition of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels. Further, because Bidon's timely notification of her intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level, pursuant to U.S.S.G. § 3E1.1(b).

The defendant's resulting adjusted offense level is 27.

Bidon has no known criminal convictions. Thus, Bidon has a Criminal History Category of I.

9

Based on a total offense level of 27 and a Criminal History Category of I, the Guidelines range for imprisonment is 70 to 87 months. Because, according to the information available to the Government, the relevant statutory criteria of 18 U.S.C. § 3553(f) have been met, the Court in this case may impose a sentence in accordance with the applicable sentencing analysis, without regard to any statutory minimum sentence.

The Guidelines range for a term of supervised release is three to five years, pursuant to U.S.S.G. § 5D1.2(a)(1). Again, because the relevant statutory criteria of 18 U.S.C. § 3553(f) have been met, the Court in this case may impose a sentence in accordance with the applicable sentencing analysis, without regard to any statutory minimum sentence of supervised release.

A term of probation is not authorized, pursuant to U.S.S.G. §§ 5B1.1(b)(2) and 5C1.1(f).

The Guidelines fine range for the instant offense is from $12,500 to $4,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3)-(4). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,952.66 to be used for imprisonment, a monthly cost of $287.50

for supervision, and a monthly cost of $1,736.98 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, the Court may deny eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). Furthermore, pursuant to § 3553(a)(6), the Court is also mindful of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

11

Considering the history and characteristics of the defendant pursuant to § 3553(a)(1), the Court takes note of the severity of the defendant's drug abuse and mental health problems. That these conditions likely contributed to the defendant's participation in the instant offense and may be ameliorated through adequate treatment weighs in favor of imposing a non-Guidelines sentence. A sentence of 48 months will, according to the Bureau of Prisons ("BOP"), provide the time needed for Bidon to be able to participate in the BOP's Residential Drug Abuse Program.

Considering the need for the sentence to reflect the seriousness of the offense and to provide adequate general and specific deterrence, pursuant to § 3553(a)(2)(A) and (B), the sentence is also appropriate. Bidon has no prior criminal convictions and has not been incarcerated prior to the instant offense. See United States v. Hernandez, No. 03 Cr. 1257-03 (RWS), 2006 WL 870933, at *4 (S.D.N.Y. Apr. 5, 2006); United States v. Arreaga, No. S303 Cr. 1121-02 (RWS), 2006 WL 278156, at *7 (S.D.N.Y. Feb. 2, 2006).

In addition to deterrence, rehabilitation also serves as a goal of punishment pursuant to § 3553(a)(2)(D), which allows the Court to consider whether the sentence imposed will "provide the defendant with needed . . . medical care, or other corrective treatment in the most effective manner." Given Bidon's need for drug abuse treatment and psychological counseling, it is determined

12

that imposition of a non-Guidelines sentence is appropriate to fulfill the rehabilitative goal of punishment and sentencing. See United States v. Rivera, No. 04 Cr. 959 (RWS), 2006 WL 1596814, at *4 (S.D.N.Y. June 9, 2006); Hernandez, 2006 WL 1596814, at *5; Arreaga, 2006 WL 278156, at *7. As already stated, a sentence of 48 months will afford the time necessary for Bidon to be able to participate in the BOP's Residential Drug Abuse Program.

Finally, mindful of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," pursuant to 18 U.S.C. § 3553(a)(6), a non-Guidelines sentence similar to that imposed on Bidon's co-defendant is appropriate.[1] Bidon and her co-defendant are similarly situated in that they were engaged in similar conduct, have a similar lack of any prior criminal convictions or incarceration, and both suffer from drug abuse and mental health problems. See United States v. Harding, No. 05 CR 1285-02 (RWS), 2006 WL 2850261 (Sept. 28, 2006).

---

[1] "Since Booker, a growing number of courts have held that sentencing judges are no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence." United States v. Ortiz-Zayas, No. 02 Cr. 0837, 2005 WL 1430489, at *3 (S.D.N.Y. June 17, 2005) (internal citations omitted); see also United States v. Fernandez, 443 F.3d 19, 31-32 & n.9 (2d Cir. 2006) (assuming arguendo, without resolving, that § 3553(a)(6) could support a sentence designed to eliminate or diminish disparity between sentences imposed on similarly situated co-defendants).

Therefore, having considered all the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Bidon is hereby sentenced to 48 months' imprisonment, followed by a five-year term of supervised release.

Bidon is viewed as a good candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2). She has kept all of her court appearances and has been in compliance with most of the terms and conditions of her pretrial release.[2] Also, Bidon is not viewed as a flight risk or a danger to the community. Bidon is therefore directed to report to the nearest Probation Office within seventy-two hours of the imposition of this sentence. It is recommended that she be supervised by the district of residence.

As mandatory conditions of her supervised release, Bidon shall: (1) not commit another federal, state or local crime; (2) not illegally possess a controlled substance; (3) not possess a

---

[2] Bidon's pretrial supervision officer indicated that Bidon initially had some problems with reporting as directed. Bidon also breached the conditions of her bond when she failed to reside with her parents during this period of pretrial release. Finally, Bidon has reportedly used crystal methamphetamine on more than one occasion since the beginning of this year.

firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

>    (1) Bidon will participate in a program approved by the United States Probation Office, which program may include testing to determine whether she has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. Bidon shall be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.
>
>    (2) Bidon also shall participate in a mental health program approved by the U.S. Probation Office. Bidon shall continue to take any prescribed medications unless otherwise instructed by the health care provider. Bidon shall contribute to the costs of services rendered not covered by third-party payment, if the defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.
>
>    (3) Bidon shall submit her person, residence, place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of the factors set forth in 18 U.S.C. § 3572(a), the fine in this case shall be waived. A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for October 24, 2006.

It is so ordered.

New York, NY
October 24, 2006

ROBERT W. SWEET
U.S.D.J.

16